FILED
JAMES BONINI
CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

05 OCT 20 PM 12: 07

1:05 CV 681

J. WATSON

|  |  |  |
|---|---|---|
| JUDITH A. PATRICK, | : | Case No._____ |
| 12 N. Heinkel Road | : | |
| Middletown, Ohio 45042 | : | |
|  | : | |
| EUNICE L. LEHMKUHL | : | **CLASS ACTION COMPLAINT** |
| 2207 Common Loon Drive | : | |
| Lakeland, Florida 33810-2387 | : | |
|  | : | |
| On Behalf of Themselves, All | : | |
| Others Similarly Situated, and the AK | : | |
| Steel Corporation Noncontributory | : | |
| Pension Plan | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| vs. | : | |
|  | : | |
| AK STEEL CORPORATION | : | |
| 703 Curtis Street | : | |
| Middletown, Ohio 45043 | : | |
|  | : | |
| AK STEEL CORPORATION | : | |
| BENEFIT PLANS ADMINISTRATIVE | : | |
| COMMITTEE | : | |
| 703 Curtis Street | : | |
| Middletown, Ohio 45043 | : | |
|  | : | |
| Defendants. | : | |

Plaintiffs, for their Class Action Complaint, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action individually, on behalf of the AK Steel

Corporation Noncontributory Pension Plan ("Plan"), and as a class action pursuant to

Rules 23(a) and (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf

of all persons who are entitled to receive a Surviving Spouse Benefit, as defined in the

Plan, and whose benefit has been or was reduced due to the surviving spouse's eligibility for Social Security benefits earned in his or her own right, in violation of the terms of both the Plan and the Summary Plan Description ("Summary").

       2.     This is a civil enforcement action brought pursuant to § 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., in which plaintiffs seek plan benefits due, equitable relief, individually and on behalf of the Plan, and attorneys' fees against defendants.

       3.     As more fully set forth below, defendants have acted in bad faith by improperly calculating the plaintiffs' Surviving Spouse Benefits under the terms of the Plan and under the terms of the Summary, and defendants are thereby in violation of plaintiffs' rights under the Plan. As a result of defendants' actions, plaintiffs have suffered substantial losses.

<u>JURISDICTION AND VENUE</u>

       4.     Plaintiffs' claims arise under and are made pursuant to ERISA § 502, 29 U.S.C. § 1132.

       5.     This court has jurisdiction over this civil action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and venue in this district is appropriate under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan is administered, where defendants' actions took place, and where defendants reside or may be found.

<u>PARTIES</u>

       6.     Plaintiff, Judith A. Patrick ("Ms. Patrick"), born December 4, 1938, is a resident and citizen of Middletown, Butler County, Ohio, is the widow of Bing

B. Patrick, deceased, and has been receiving Surviving Spouse Benefits from the Plan since on or about November 1, 2001, making her a Beneficiary of the Plan within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8).

7.     Ms. Patrick's decedent, Bing B. Patrick, was a participant in the Plan until his death on October 8, 2001, at age 64.

8.     Plaintiff, Eunice L. Lehmkuhl ("Ms. Lehmkuhl"), born February 22, 1930, is a resident and citizen of Lakeland, Polk County, Florida, is the widow of Donald F. Lehmkuhl, deceased, and has been receiving Surviving Spouse Benefits from the Plan since on or about October 1, 2003, making her a Beneficiary of the Plan within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8).

9.     Ms. Lehmkuhl's decedent, Donald F. Lehmkuhl, was a participant in the Plan until his death on September 26, 2003, at age eighty-five (85).

10.     Defendant AK Steel Corporation ("AK Steel" or "the Company") is a Delaware corporation qualified to do business in the State of Ohio, with a registered office and its principal place of business located in Middletown, Butler County, Ohio.  At all times relevant to the Complaint, AK Steel has sponsored and administered the Plan under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and has been a fiduciary of the Plan. AK Steel is a fiduciary of the Plan because its retains some discretion as to the amount of contributions made to the Plan.  AK Steel Corporation Noncontributory Pension Plan, Plan Document B, Article 11.1.

11.     Defendant AK Steel Corporation Benefit Plans Administrative Committee ("BPAC") is the Plan administrator and a named fiduciary of the Plan.  BPAC is located and performs its administrative duties in Middletown, Butler County, Ohio.

## CLASS ACTION ALLEGATIONS

12.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all beneficiaries entitled to a Surviving Spouse Benefit under the Plan whose benefit has been reduced due to the surviving spouse's eligibility for Social Security benefits earned in his or her own right, who were entitled to a Surviving Spouse Benefit under the Plan whose benefit was similarly reduced.

13.    The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe there are, at a minimum, hundreds of members of the class.  The Plan's Form 5500 Annual Report for 2003 indicates that the Plan has nearly 5,000 Beneficiaries who are receiving or are eligible to receive benefits, and it is reasonable to believe that many of these Beneficiaries have received or are receiving Surviving Spouse Benefits that have been reduced due to the surviving spouse's eligibility for Social Security benefits earned in his or her own right.  It is also reasonable to believe that many deceased windows' and widowers' pension rights were incorrectly calculated.

14.    Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.  Among the questions of law and fact common to the class are:

a.    whether defendants violated the terms of the Plan;

b.    whether defendants violated the terms of the Summary;

c.    whether the plaintiffs were injured by such violations; and

4

d.      whether the class is entitled to appropriate equitable relief.

15.      Plaintiffs' claims are typical of the claims of the members of the class, as plaintiffs and members of the class sustained injury arising out of defendants' wrongful conduct in violating the terms of the Plan, the terms of the Summary, and ERISA.

16.      Plaintiffs will fairly and adequately protect the interests of the members of the class.  Plaintiffs have retained competent counsel.  Plaintiffs have no interests antagonistic to or in conflict with those of the class.

17.      Prosecution of separate actions by members of the class would create a risk of inconsistent adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants; or adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

18.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the class is impracticable.  Furthermore, because the injury suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

FACTS COMMON TO ALL CLAIMS

19.     The Plan is an employee benefit plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A).

20.     The Plan is a "defined benefit" plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), in that the Plan contributes funds to each participant's account based on each individual participant's salary and years of service to the Company.

21.     The Plan provides a Surviving Spouse Benefit, whereby the participant's surviving spouse, if any, receives 50% of the benefit otherwise available to the participant before his or her death, reduced further by 50% of the surviving spouse's widow or widower's benefits from Social Security, if the surviving spouse is eligible for such benefits from Social Security.

22.     Under the terms of the Plan and under the terms of the Summary, which was provided to participants and beneficiaries on a regular basis, the surviving spouse's Social Security benefits *based on his or her own earnings record* were not to be used in the calculation of this reduction.

23.     The terms of the Plan provide that if a participant covered by the Plan dies, the monthly amount of the surviving spouse's benefit shall be equal to 50% of the regular pension otherwise payable to the participant at the time of his or her death as defined in the plan, with adjustments if a participant dies before retirement, or if a participant dies after eligibility for early retirement.  (AK Steel Corporation Noncontributory Pension Plan, Plan Document B, Article 8.3(a)–(c)).

24.     The terms of the Plan also provide:

6

"Commencing with the first Surviving Spouse's Benefit payable after the Surviving Spouse attains the age at which widow's or widower's benefits are first provided under a Public Pension [including Social Security], the amount of the Surviving Spouse's Benefit otherwise payable for any month shall be reduced by 50% of the amount of the widow's or widower's benefit to which the Surviving Spouse is or upon application would be entitled to receive for such month . . . based upon the benefit payable to such person as a widow or widower *without regard to any benefit earned in his or her own right*."

AK Steel Corporation Noncontributory Pension Plan, Plan Document B, Article 8.3(d) (emphasis added).

25.     The Summary provides:

"Once your surviving husband or wife reaches age 60 and become [sic] eligible for Social Security widower or widow benefits, the benefit calculation changes. From age 60 on, your survivor will receive a monthly income amounting to 50% of your regular pension MINUS one-half of the Social Security widower/widow benefits they are eligible to receive."

Summary Plan Description of AK Steel Noncontributory Pension Plan, at 33 (emphasis in original).

26.     Plaintiff Ms. Patrick's decedent, Bing B. Patrick, was employed by AK Steel until January 31, 1991, at which time he began to receive pension benefits as a participant in the Plan.

27.     Upon the death of Bing B. Patrick on October 8, 2001, Ms. Patrick began receiving Surviving Spouse Benefits under Article 8 of the Plan.

28.     On October 18, 2001, defendants notified Ms. Patrick that due to her husband's death, she was entitled to a monthly Surviving Spouse Benefit of $556.56, reduced by 50% of her Social Security widow's benefit, and that the amount of her monthly Surviving Spouse Benefit from the Plan would not be less than $140.00.

7

29.     The Social Security Administration ("SSA") subsequently notified Ms. Patrick that her monthly Social Security widow's benefit would be $367.90, in addition to a monthly benefit of $780.40 from her own earnings record.

30.     The SSA also notified AK Steel that Ms. Patrick's Social Security widow's benefit, upon her husband's death, would be $367.00, in a letter dated October 26, 2001.

31.     AK Steel was not satisfied with the figure from the SSA's October 26, 2001 letter, and the Company subsequently requested a new figure from the SSA, which was provided to the Company in a letter, dated November 2, 2001, that incorrectly stated Ms. Patrick's Social Security widow's benefit to be $1147.00.

32.     AK Steel computed Ms. Patrick's Surviving Spouse Benefit by reducing her husband's benefit by 50% in accordance with the plan and reducing the benefit further by 50% of Ms. Patrick's total Social Security benefit, including the Social Security benefit she was receiving based on her own earnings record.  AK Steel computed Ms. Patrick's benefit as follows:

| | |
|---|---|
| Bing B. Patrick's Base Pension (monthly): | $1,113.12 |
| | x 50% |
| Surviving Spouse Benefit before Social Security Offset: | $556.56 |
| Minus 50% of Total Social Security Benefit (**$1,147.00**): | -$573.50 |
| Surviving Spouse Benefit after Social Security Offset: | -$16.94 |

33.     AK Steel thus computed Ms. Patrick's Survivor Spouse Benefit to be -$16.96, but provided Ms. Patrick with the minimum benefit of $140.00 under the Plan.

34.     In a letter dated September 23, 2002, Ms. Patrick's counsel notified AK Steel that the computation of Ms. Patrick's Surviving Spouse Benefit under

8

the Plan was incorrect because it used Ms. Patrick's Social Security benefit from her own

earnings record to reduce her Surviving Spouse Benefit under the Plan, which was a

violation of the terms of the Plan. Ms. Patrick's counsel notified AK Steel that, under the

terms of the Plan, the computation should have been as follows:

| | |
|---|---|
| Bing B. Patrick's Base Pension (monthly): | $1,113.12 |
| | x 50% |
| Surviving Spouse Benefit before Social Security Offset: | $556.56 |
| Minus 50% of Social Security widow's benefit (**$367.00**): | -$183.50 |
| Surviving Spouse Benefit after Social Security Offset: | $373.00 |

35.     Ms. Patrick's counsel also notified AK Steel, on September 23,

2002, that due to the computation error, Ms. Patrick was owed an additional $232.61 per

month, retroactive to the date she began receiving benefits under the Plan, in addition to

an increased benefit of $373.00 per month under the Plan.

36.     In a letter dated October 2, 2002, AK Steel notified Ms. Patrick's

counsel that it would not comply with her request. AK Steel stated that it was the

Company's practice to use the surviving spouse's total Social Security benefit, without

subtracting the spouse's Social Security benefits from his or her own earnings record, to

reduce the Surviving Spouse Benefit under the Plan, even though this practice is a

violation of the terms of the Plan and the terms of the Summary.

37.     Plaintiff Ms. Lehmkuhl's decedent, Donald F. Lehmkuhl, was

employed by AK Steel until June 30, 1980, at which time he began to receive pension

benefits as a participant in the Plan.

38.     When Donald F. Lehmkuhl retired from AK Steel in 1980, AK

Steel employees provided the Lehmkuhls with a document outlining the estimated

Surviving Spouse Benefit that Ms. Lehmkuhl would receive in the event of her husband's

9

death. The document stated that Ms. Lehmkuhl's Surviving Spouse Benefit would be 50% of her husband's benefit at the time of his death, reduced further by 50% of Ms. Lehmkuhl's Social Security widow's benefit once she became eligible for such benefit from Social Security. Moreover, the document stated that Ms. Lehmkuhl's estimated monthly Surviving Spouse Benefit under the Plan, after the Social Security reduction, would be about $418.00.

39.     Upon the death of Donald F. Lehmkuhl on September 26, 2003, Ms. Lehmkuhl began receiving Surviving Spouse Benefits under Article 8 of the terms of the Plan and under the Summary.

40.     At the time of his death, Donald F. Lehmkuhl was receiving a monthly pension payment of $1,200.42 under the Plan. Ms. Lehmkuhl's subsequent Surviving Spouse Benefit was determined by defendants to be $90.00 per month, without an explanation as to how the Benefit was computed.

41.     Ms. Lehmkuhl had received a letter from the Social Security Administration ("SSA") notifying her that her widow's benefit from Social Security would be $459.70, in addition to a Social Security benefit of $679.90 from her own earnings record. The SSA also sent a notice entitled "Potential Private Pension Benefit Information" to Ms. Lehmkuhl notifying her that her estimated monthly Surviving Spouse Benefit under the Company's Plan would be $354.94, rather than the $90.00 monthly benefit the Company ultimately provided to her.

42.     Defendants, in calculating Ms. Lehmkuhl's Surviving Spouse Benefit, used both her Social Security widow's benefit and the Social Security benefit based on her own earnings record. Ms. Lehmkuhl's minimum Surviving Spouse Benefit

10

of $90.00 was therefore computed improperly under the terms of the Plan and under the terms of the Summary, because the Social Security benefit Ms. Lehmkuhl was receiving based on her own earnings record should not have been used to reduce her Surviving Spouse Benefit under the Plan.

      43.     On November 18, 2003, Ms. Lehmkuhl sent a letter to defendants requesting a copy of their computation of her Surviving Spouse Benefit. In that letter, Ms. Lehmkuhl provided defendants with a copy of the SSA notification she received that estimated her Surviving Spouse Benefit from the Plan to be $354.94. Defendants never responded to the letter.

      44.     On January 7, 2004, Ms. Lehmkuhl again sent a letter to defendants requesting documentation of the computation of her Surviving Spouse Benefit. In that letter, Ms. Lehmkuhl provided defendants with a copy of the document which she and her husband had received at his retirement which estimated her Surviving Spouse Benefit to be about $418.00. Defendants again did not respond to the letter.

      45.     On February 16, 2004, Ms. Lehmkuhl again sent a letter to defendants, this time providing defendants with a copy of the SSA letter she received notifying her that her Social Security widow's benefit was $459.70, in addition to her Social Security benefit of $679.90 from her own earnings record. Defendants again did not respond to the letter.

      46.     Ms. Lehmkuhl has contacted defendants by telephone on numerous occasions, including March 11, 2004, March 26, 2004, and April 2, 2004. Each time she contacted defendants, defendants promised to send her the documentation she sought. Defendants never sent such documentation to Ms. Lehmkuhl.

47.     Defendants have not increased Ms. Lehmkuhl's Surviving Spouse Benefit subsequent to her communications with them.  Additionally, defendants have not paid Ms. Lehmkuhl any retroactive benefits due to their computation errors.

## FIRST CLAIM FOR RELIEF

(Recovery of Benefits Due Under Plan—ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

48.     Plaintiffs incorporate each of the allegations of paragraphs 1-47 as if fully restated.

49.     Plaintiffs and the class are beneficiaries of the Plan and defendants' miscalculation of plaintiffs' and the class's Surviving Spouse Benefits is a violation of the terms of the Plan.  Pursuant to 29 U.S.C. § 1132(a)(1)(B), plaintiffs and the class are therefore entitled to recover those benefits due to them under the terms of the Plan, in an amount to be determined at trial, including interest.

## SECOND CLAIM FOR RELIEF

(Clarification of Rights to Future Benefits Under Plan—ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

50.     Plaintiffs incorporate each of the allegations of paragraphs 1-49 as if fully restated.

51.     As beneficiaries of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B), plaintiffs and the class are entitled to a clarification of their rights to future benefits under the Plan.  The Court should therefore enter declaratory judgment in favor of plaintiffs and the class, interpreting the Plan to allow deduction of 50% of the Social Security widow or widower's benefit, and not 50% of the Social Security benefit based

on a surviving spouse's own earnings record, from the Surviving Spouse Benefit under the Plan.

### THIRD CLAIM FOR RELIEF

(Enforcement of Rights Under Plan—ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

52.    Plaintiffs incorporate each of the allegations of paragraphs 1-51 as if fully restated.

53.    As beneficiaries of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B), plaintiffs and the class are entitled to enforce their rights under the terms of the Plan.  The Court should therefore enter an injunction enforcing plaintiffs and class's rights to have defendants follow the terms of the Plan in their calculation of plaintiffs' and the class's past and future benefits.

### FOURTH CLAIM FOR RELIEF

(Injunctive Relief—ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A))

54.    Plaintiffs incorporate each of the allegations of paragraphs 1-53 as if fully restated.

55.    As beneficiaries of the Plan and pursuant to 29 U.S.C. § 1132(a)(3)(A), plaintiffs and the class are entitled to injunctive relief to enjoin any act or practice that violates the terms of the Plan.  Under the circumstances, it is appropriate for the Court to enter an order enjoining defendants from continuing to violate the terms of the Plan by miscalculating plaintiffs' and the class's benefits under the Plan.

<u>FIFTH CLAIM FOR RELIEF</u>

(Injunctive Relief—ERISA § 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i))

56.     Plaintiffs incorporate each of the allegations of paragraphs 1-55 as if fully restated.

57.     As beneficiaries of the Plan and pursuant to 29 U.S.C. § 1132(a)(3)(B)(i), plaintiffs and the class are entitled to injunctive relief appropriate to redress defendants' violations of the terms of the Plan.  Under the circumstances, it is appropriate and equitable for the Court to enter an order requiring defendants to provide the past benefits due to plaintiffs and the class as a result of defendants' miscalculation of such benefits under the terms of the Plan, in an amount to be determined at trial, including interest.

<u>SIXTH CLAIM FOR RELIEF</u>

(Injunctive Relief—ERISA § 502(a)(3)(B)(ii), 29 U.S.C. § 1132(a)(3)(B)(ii))

58.     Plaintiffs incorporate each of the allegations of paragraphs 1-57 as if fully restated.

59.     As beneficiaries of the Plan and pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii), plaintiffs and the class are entitled to injunctive relief appropriate to enforce the terms of the Plan that defendants have violated in their miscalculation of plaintiffs' and the class's benefits under the Plan.  Under the circumstances, it is appropriate and equitable for the Court to enter an order directing defendants to use only plaintiffs' and the class's Social Security widow or widower's benefits, rather than

plaintiffs' and the class's Social Security benefits based on their own earnings records, to reduce plaintiffs' and the class's benefits under the Plan.

## SEVENTH CLAIM FOR RELIEF

(Restitution on behalf of the Plan—ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2))

60.     Plaintiffs incorporate each of the allegations of paragraphs 1-59 as if fully restated.

61.     Plaintiffs, individually and as a class, bring this Count on behalf of the Plan to restore and compensate the Plan for losses resulting from improper administration of the Plan.

62.     By interpreting the Plan in contradiction with the Plan documents, and by doing so in furtherance of AK Steel's interests rather than the sole interest of the Plan participants and beneficiaries, BPAC breached its fiduciary duties to plaintiffs and the Class.

63.     AK Steel Corporation Benefit Plans Asset Review Committee ("BPARC") is in charge of, among other things, establishing the Plan's funding policy.

64.     Under the terms of the Plan, BPARC is required to engage an actuary to evaluate whether the Plan is properly funded and review the actuary's methods.  AK Steel Corporation Noncontributory Pension Plan, Plan Document B, Article 11.2.

65.     Under the terms of the Plan, the Company is required to make contributions to the plan on at least a quarterly basis, based on the recommendations of

15

the actuary. AK Steel Corporation Noncontributory Pension Plan, Plan Document B,

Article 11.1.

66.     On information and belief, as a result of improper administration of

the Plan, resulting in reduced payouts to the Plan beneficiaries and, thus, greater cash

retention by the Plan, and the corresponding recommendations of BPARC and the

actuary, AK Steel made reduced contributions to the Plan.

67.     Pursuant to 29 U.S.C. § 1109(a), BPAC and AK Steel are liable to

make good to the Plan any profits gained by BPAC or AK Steel and any losses to the

Plan sustained as a result of the these breaches of duty or improper administration of the

Plan.

<u>EIGHTH CLAIM FOR RELIEF</u>

(Injunctive Relief on behalf of the Plan—ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

68.     Plaintiffs incorporate each of the allegations of paragraphs 1-67 as

if fully restated.

69.     Plaintiffs, individually and as a class, bring this Count on behalf of

the Plan to enjoin BPAC from administering the Plan in conflict with its terms.

70.     By reducing eligible beneficiaries' Surviving Spouse Benefits

based on Social Security benefits earned by the surviving spouse in his or her own right,

contrary to the Plan but to the benefit of AK Steel, BPAC breached its fiduciary duties to

the Plan participants and beneficiaries and failed to discharge its duties solely in the

interest of, and exclusively for the benefit of, the Plan participants and beneficiaries. 29

U.S.C. § 1104(a)(1).

16

71.     Pursuant to 29 U.S.C. § 1132(a)(3), plaintiffs and the class seek, on behalf of the Plan, injunctive relief to enjoin this unlawful conduct and to obtain such other appropriate equitable relief as is necessary and appropriate to redress BPAC's breaches of duty and violations of law.

WHEREFORE, plaintiffs, individually and on behalf of all others similarly situated and the Plan, request that the Court order the provision of plaintiffs' past benefits due, including interest, in an amount to be determined at trial, and enjoin defendants from further violation of the terms of the Plan, and make restitution to the Plan of all money earned or saved as a result of these violations; and plaintiffs further demand judgment against defendants in the amount of plaintiffs' reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1), and such other relief, both legal and equitable, as the Court may find appropriate and just in the premises.

Respectfully submitted,

Mary C. Henkel

Daniel J. Buckley (0003772)
Mary C. Henkel (0039563)
Vorys Sater Seymour and Pease LLP
221 East Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, Ohio 45202
Telephone:  513-723-4000
Facsimile:  513-723-4056

James D. Ruppert, Esq. (0011817)
Rupert E. Ruppert, Esq. (0025972)
Ruppert, Bronson & Ruppert Co., LPA
1063 East Second Street
P.O. Box 369
Franklin, OH  45005

*Trial Attorneys for Plaintiffs*

17