**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JUDITH A. PATRICK, et al., | : | Case No.  1:05cv00681 |
| | : | |
| Plaintiffs, | : | Judge Barrett |
| vs. | : | |
| | : | |
| AK STEEL CORPORATION, et al., | :: | |
| | : | |
| Defendants. | : | |

---

**CLASS PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS SETTLEMENT**

---

Class Plaintiffs Judith A. Patrick, et al., move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an order granting (1) final approval of the Settlement, and (2) Class Counsel's award of attorneys' fees and costs.  In support of this motion, Class Plaintiffs submit the Memorandum filed herewith.  For the reasons set forth in the accompanying Memorandum, Class Plaintiffs submit that the proposed settlement is fair, reasonable and adequate.  Accordingly, final approval should be granted and Class Counsel should be awarded its full attorneys' fees and costs.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Plaintiffs Judith A. Patrick, et al. ("Class Plaintiffs") respectfully request an order granting final approval of the Proposed Settlement Agreement ("the Settlement") with Defendant AK Steel Corporation ("Defendant") that this Court preliminary approved on July 29, 2013.   The Settlement was reached after negotiations supervised by this Court, which followed years of litigation and a recent decision by the Sixth Circuit in a similar matter.   Notice of the Proposed Settlement Agreement has been distributed to Class Plaintiffs and two individuals eligible for membership in the Class have opted out.   For these reasons and those discussed below, the Settlement is fair, adequate, and reasonable, and satisfies all applicable requirements for final approval.

## II.     BACKGROUND

### A.     *Overview of the Litigation*

Plaintiffs brought this action in October 2005, as an ERISA civil enforcement action against AK Steel Corporation and AK Steel Corporation Benefits Plan Administrative Committee (collectively, "AK Steel"), seeking to recover additional benefits under the AK Steel Corporation Noncontributory Pension Plan ("Plan") for widows and widowers who had earnings in their own right, and whose Surviving Spouse benefits were calculated with those earnings included in a formula that reduced the amount payable to them under the Plan.  (Complaint, *Doc. 1.*)

On March 31, 2008, this Court ruled in favor of the plaintiffs on the issue of interpretation of the Plan.  (*See* Order, *Doc. 43* at 9.)  The Court issued an Order certifying the class on October 27, 2008 *(Doc. 53)*, and its first Order approving notice to the class on January 29, 2009 *(Doc. 62)*.  Class Counsel then notified all prospective class members and the Parties

engaged in extensive discovery on the issue of damages, including the engagement and examination of expert witnesses.

On October 31, 2012, the Sixth Circuit reversed the lower court decision in *Lipker v. AK Steel*, 698 F.3d 923 (6th Cir. 2012). The lower court had relied on this Court's ruling, interpreting the Plan at issue in this case, to interpret another AK Steel ERISA plan. Based on the Sixth Circuit reversal in *Lipker*, Defendants filed a Motion to Reconsider this Court's 2008 ruling on Plan interpretation *(Doc. 121)*. That motion was briefed, and heard by the Court on February 20, 2013. Subsequent to that argument and before the Court rendered a decision on it, the Parties entered into settlement negotiations under the Court's supervision. Those negotiations resulted in the Settlement Agreement preliminarily approved by the Court on July 29, 2013. *(Doc. 131.)*

The Settlement requires Defendant to pay $2,500,000, of which $1,700,000 will be paid to Class Plaintiffs and $800,000 will be applied to Class Counsel's attorneys' fees and costs. (*See* Settlement Agreement, attached as Exhibit 1 to Motion for Preliminary Approval of Class Settlement, *Doc. 129*.) Each Class Plaintiff will receive an amount equal to $1,700,000 divided by the total number of Class Plaintiffs, rounded up the nearest penny. (*Id*.) Based upon the current size of the Class, each Class Plaintiff will receive approximately $1,724.14. (*Id*.) In exchange, the Class Plaintiffs agree to release their claims against Defendant and dismiss the case with prejudice. (*Id*.) This settlement is a better result for the Class than the risk that they might receive nothing, in light of *Lipker* decision. The requested award of $800,000 in attorneys' fees and costs is fair and reasonable, based on the substantial out-of-pocket expenses in connection with the information-gathering efforts and expert services in the amount of $244,205.03, in addition to legal services for the Class over the course of eight years for which

the usual clients of Class Counsel would pay approximately $1,350,000 in attorneys' fees, but for which Class Counsel only stands to receive $555,794.97. (*See* Motion For Attorneys' Fees and Costs, *Doc. 132* at 8-10.)

### B. CAFA Notice

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 *et seq.,* requires that "appropriate state and federal officials" be notified of a pending class action settlement in federal court. Following the filing of the Motion for Preliminary Approval of the Settlement on July 1, 2013, counsel for Defendant served notice pursuant to CAFA regarding the pending class action settlement on the Attorney General of the Unites States and the Attorneys General of the various states in which Class Plaintiffs reside. (*See* Declaration of Douglas R. Dennis, *Doc. 130.*)

### C. Class Members Contacted

Pursuant to the Court's Order, Defendant mailed the Notice of Proposed Settlement to Class Members before the August 12, 2013 deadline to more than 4,000 Class Plaintiffs and prospective Class Plaintiffs. In response to the more than 4,000 Notices mailed, Class Counsel has only received notice from two individuals eligible for membership in the Class stating their intent to opt out of the Settlement.[1] *See* Declaration of Mary Henkel, attached hereto as Exhibit A at ¶ 4. To date, no objections have been received. *Id*. at ¶ 5.

## III. LAW AND ARGUMENT

### A. Legal Standard

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal

---

[1] In comparison, when the initial class notification was mailed in 2009, 97 individuals notified Class Counsel of their intent to opt out. *See* Ex. A. at ¶ 3. Because Class Counsel could not secure Social Security information for these individuals, Class Counsel does not know how many, if any, of the 97 would have been eligible for membership in the class. *Id.*

litigation. *Clark Equipment Co. v. International Union, Allied Industrial Workers*, 803 F.2d 878, 880 (6th Cir. Ky. 1986) (finding persuasive the Ninth Circuit's review of settlements); *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. Ohio 1992) ("Relevant factors framing our inquiry include the likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members."); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), vacated on other grounds and modified, 670 F.2d 71 (1982) (the law generally favors and encourages the settlement of class actions); *In re Nationwide Fin. Servs. Litig.*, No. 08-CV-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) (same); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006); 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE (3d Ed. 1999); MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.41 (3d ed. 1992) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."); *see also Offices for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.").

Despite the strong judicial policy in favor of settlement, a class action settlement must be "fair, reasonable, and adequate" to merit approval. *See* Fed. R. Civ. Pro. 23(e)(2). "The evaluation and approval of a class settlement is committed to the sound discretion of the district court" and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593, 594. "In exercising that discretion, the Court may limit the fairness hearing to whatever is

necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 U.S. Dist. LEXIS 70471, at *21 (E.D. Mich. July 13, 2006) (internal quotation marks and citations omitted). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE-CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted); *Sheick v. Automotive Component Carrier LLC*, No. 09-14429, 2010 U.S. Dist. LEXIS 110411, at *14 (E.D. Mich. Oct. 18, 2010) ("In assessing a proposed settlement, the district court judge 'may not substitute his or her judgment for that of the litigants and their counsel' and 'should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'") (quoting *IUE-CWA*, 238 F.R.D. at 593). "Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties." *Ford Motor*, 2006 U.S. Dist. LEXIS 70471 at *21 (internal quotation marks and citation omitted).

In the Sixth Circuit, the district courts consider several factors in evaluating the fairness, adequacy and reasonableness of a proposed settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the  amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *see also Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at

372.   The district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205-06 (6th Cir. 1992)*; *see also Officers for Justice,* 688 F.2d at 625 ("The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.")   Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice,* 688 F.2d at 625.  "[N]either the fairness of the settlement agreement, nor the factual or legal disputes which underlie the merits of the dispute, need be examined by the court or appellate courts." *Clark Equipment Co.,* 803 F.2d at 880.

### B.    *Evaluation of Fairness Factors*

#### 1.    *Risk of Fraud or Collusion*

Here, as evidenced by the nature of the negotiations and the amount and form of relief attained in the Settlement, there was no risk of fraud or collusion.

##### i.    The Nature of the Negotiations

"So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also* MANUAL FOR COMPLEX LITIGATION § 30.43 at 289 (3d Ed. 2002); NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th Ed. 2002). Settlement approval is appropriate where the parties reach an agreement after arm's length negotiations, where there is no collusion or benefit to certain parties to the detriment of the class as a whole. *See In re Dun & Bradstreet Credit Services Customer Litig.*,

130 F.R.D. 952 (N.D.Ga.); *In re Polaroid Fin'll Corp. ERISA Litig.*, No, 01-CV-5027 (N.D.Cal.); *In re Merck ERISA Litig.*, No. 05-CV-01151 (D.N.J.). 366, 372 (S.D. Ohio 1990); *Manners*, 1999 WL 33581944, at *22 (settlement approved as "product of extensive, contentious arm's length negotiations that lasted for close to a year.").

As noted above, the Parties reached the Settlement through arms' length negotiations between experienced counsel, with the assistance of the Court, after performing sufficient discovery to intelligently evaluate the strengths and weaknesses of the case. Accordingly, the arm's length nature of the negotiations that led to the Settlement favors the granting of final approval.

### ii. The Amount and Form of Relief Offered in Settlement

A proposed class action settlement must fall "within the 'range of reasonableness.'" *Manners v. Am. General Life Ins. Co.*, No. 98-CV-0266, 1999 WL 33581944, at *20 (M.D. Tenn. Aug. 11 1999) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("[i]n assessing the settlement, the court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation")). Indeed, settlements never result in the recovery of full amount of alleged losses. *UAW*, 2006 WL 891151, at *17. Rather, a "just" settlement is generally "an arbitrary point between competing notions of reasonableness." *Id.* (*citing In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981)).

In this case, the Settlement of $1,700,000 with an additional $800,000 for payment of Class Counsel's attorneys' fees and costs reflects a fair, adequate, and reasonable compromise amount for these disputed claims. *Id.* Class Plaintiffs faced years of additional litigation with the likelihood of success decreased by the Sixth Circuit's decision in *Lipker*. If the Court ruled

against the Class Plaintiffs on Defendant's Motion to Reconsider or if it ruled for them but was reversed on appeal by the Sixth Circuit, the Class Plaintiffs would receive nothing at all.  The Settlement also allows Defendant to avoid the costs and risks of prolonged litigation.

More than a quarter of the requested award of $800,000 attorneys' fees and costs will be applied to Class Counsel's substantial out-of-pocket expenses in connection with the information-gathering efforts and expert services that the unique facts of this case required.  (*See Doc. 132* at 8.)  The remaining $555,794.97 in legal fees represents less than half of the amount that usual clients of Class Counsel would have paid for the services Class Plaintiffs received over the course of eight years.  (*Id.* at 10.)

### 2.  *Complexity, expense and likely duration of litigation*

Courts must evaluate the complexity, expense and likely duration of litigation before approving a class action settlement. *In re Telectronics Pacing Sys, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Courts in this district have aptly characterized class action trials as a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998)).

Here, the claims at issue involve the interpretation of complicated Plan language and the calculation of damages using complex formulas.  The Parties' litigation costs have been significant.  Both sides retained experts who, due to the nature of the case, were required to engage in time-intensive damages calculations for each Class Member.  Moreover, to date, the litigation has been ongoing for eight years and in light of the virtual certainty of an appeal, the ultimate duration of the matter would likely surpass a decade.

          3.     *Amount of discovery engaged in by the parties*

"The relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Manners*, 1999 WL 33581944, at *21 (citing *Woodward v. NOR-AM Chem. Co.*, No. 94-CV0780, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996)). Here, the Parties have engaged in extensive discovery over the course of eight years. That discovery has allowed the Parties to intelligently evaluate the claims asserted in this case in view of the amount of relief potentially at stake and risks of continued litigation. Accordingly, the discovery conducted during this litigation was sufficient to enable the parties to intelligently enter into the Settlement.

          4.     *The likelihood of success on the merits*

The likelihood of success on the merits balanced against the relief obtained through settlement is an important factor for evaluating the propriety of settlement approval. *Gen Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 372. However, the Court "has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." Williams, 720 F.2d at 921 (citing *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981)). Rather, the focus is on "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *UAW v. General Motors Corp.*, No. 05-CV73991, 2006 WL 891151, at *15 (E.D. Mich. Mar. 31, 2006) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)).

Even if the Court had denied Defendant's motion to reconsider its previous ruling on liability, Defendant would have appealed to the Sixth Circuit. There, Class Plaintiffs would face the significant challenge of convincing the Sixth Circuit that it should not simply apply *Lipker* to

this matter, where the language is similar, if not identical. If either the Court or the Sixth Circuit sided with Defendant, Class Plaintiffs would receive nothing. In light of the *Lipker* decision, the interests of Class Plaintiffs are plainly better served by the Settlement.

5. *Opinions of Class Counsel*

Courts also recognize that the opinion of experienced and informed and competent counsel in favor of settlement should be afforded substantial consideration. *Williams*, *supra*, 720 F.2d at 922-23; UAW, 2006 WL 891151, at *18 ("It is . . . well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.") (citing *Mich. Hosp. Ass'n v. Babcock*, No. 89-CV-00070, 1991 U.S. Dist LEXIS 2058, at *6 (W.D. Mich. Feb. 11, 1991)).

Here, Glenn V. Whitaker, lead counsel for the Class, is a nationally-renowned litigator of the highest professional skill and standing. Other counsel of the law firm of Vorys, Sater, Seymour and Pease, LLP, assisting on the case are also highly qualified and reputable. Co-counsel James D. Ruppert and Rupert E. Ruppert of Ruppert, Bronson & Ruppert Co., L.P.A., are likewise highly experienced and well-respected attorneys. Class Counsel, then, are clearly experienced, informed and competent, and they are unanimously in favor of Settlement.

6. *The reaction of absent class members*

Class Members have ratified their approval of the Settlement by their response to the Notice. In response to the Notice of Proposed Settlement, only two individuals eligible for membership in the Class have chosen to opt out, and not a single Class Plaintiff or prospective Class Plaintiff has objected to the Settlement. *See* Ex. A at ¶ 4-5. Accordingly, this factor weighs in favor of granting final approval of the Settlement.

11

       7.    *The public interest*

The Sixth Circuit has expressly recognized the public interests served through compromise:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 555 n.11 (6th Cir. 1982), rev'd on other grounds, 467 U.S. 561 (1984); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)). Thus, the public's interest also favors granting final approval to the Settlement.

## IV.    CONCLUSION

For the reasons set forth herein, Class Plaintiffs respectfully request that this Court grant (1) final approval of the Settlement and (2) Class Counsel's award for attorneys fees and costs.

                Respectfully submitted,

                /s/  *Glenn V. Whitaker*
                Glenn V. Whitaker (0018169)
                Mary C. Henkel (0039563)
                Adam C. Sherman (0076850)
                Vorys Sater Seymour and Pease LLP
                301 East Fourth Street
                Great American Tower, Suite 3500
                Cincinnati, Ohio 45202
                Telephone:  513-723-4000
                Facsimile:  513-723-4056

                James D. Ruppert, Esq. (0011817)
                Rupert E. Ruppert, Esq. (0025972)

Ruppert, Bronson & Ruppert Co., LPA
1063 East Second Street, P.O. Box 369
Franklin, OH  45005
Telephone:  937-746-2832

*Attorneys for Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Class Plaintiffs' Motion for Final Approval of Class Settlement was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel, this 5th day of November, 2013.

Adam P. Hall
Douglas R. Dennis
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-418
*Attorneys for Defendants*

/s/ *Glenn V. Whitaker*